UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KELLY CORCORAN, | Case No. C21-478-RSL |
| Plaintiff, | |
| v. | ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY S.I., | |
| Defendant. | |

This matter comes before the Court on (1) defendant American Family Mutual Insurance Company S.I.'s "Motion for Summary Judgment" (Dkt. # 18), and (2) plaintiff Kelly Corcoran's "Request for Summary Judgment for Plaintiff" (Dkt. # 22).  Having reviewed the submissions of the parties and the remainder of the record, the Court finds as follows:

## I.  Background

On March 29, 2015, a speeding uninsured motorist rear-ended plaintiff's stopped car. Dkt. # 1-1 at ¶ 3.1; <u>see</u> <u>also</u> Dkt. # 19-6 at 29.  The impact pushed her car into another stopped vehicle in front of her, totaling her car and causing her airbags to deploy.  Dkt. # 1-1 at ¶ 3.1. Plaintiff was injured in the collision.  Dkt. # 19-6 at 29-30.  Defendant insured plaintiff at the time of the collision.  Dkt. # 1-1 at ¶ 3.1; <u>see generally</u> Dkt. # 19-1 at 1-31 (insurance policy).

Plaintiff's insurance policy provided for $10,000 of personal injury protection ("PIP") coverage and $100,000 of underinsured motorist coverage.  <u>See</u> Dkt. # 19-1 at 1-31; <u>see also</u> Dkt. # 22 at 3.  Defendant paid plaintiff her full $10,000 PIP benefit towards medical expenses, and accepted incurred medical expenses totaling $15,718.00.  <u>See</u> Dkt. # 19-5 at 42.

On October 10, 2017, plaintiff submitted a $100,000 underinsured motorist policy limit demand to defendant, which she supported with medical records. Dkt. # 1-1 at ¶ 4.1. On November 15, 2017, defendant rejected plaintiff's policy limit demand and made a settlement offer of $25,000, which it promptly increased to $30,000. Id. ¶ 4.2. Plaintiff continued to provide medical records to defendant. See Id. at ¶¶ 4.2-4.6.

Around April 12, 2018, defendant instructed plaintiff to submit to a physical independent medical evaluation ("IME") before it would move forward in evaluating her claims.[1] See Dkt. # 19-1 at 33. On April 16, 2018, plaintiff's counsel replied to defendant, demanding certain documentation before plaintiff would submit to an IME and objecting to defendant's scheduling procedures. See id. at 35. From that date until January 25, 2021, defendant, and eventually its counsel, repeatedly insisted that it required an IME to evaluate plaintiff's claims and maintained that it was entitled to an IME pursuant to the terms of the insurance policy. See id. at 37, 41-42, 46, 48, 51, 53; Dkt. # 19-3 at 2, 56, 67; Dkt. # 19-4 at 2, 17-18; Dkt. # 19-5 at 2-3, 21-23, 33-34, 42-43; Dkt. # 19-6 at 2, 7-8, 16-17, 23-24. Defendant averred that an IME was appropriate due to certain medical records indicating that plaintiff experienced similar injuries prior to the collision. See Dkt. # 19-3 at 2. Plaintiff's counsel, in turn, repeatedly demanded policy limits and objected to the IME, at times conditionally on receipt of satisfactory documentation of defendant's rationale, and at times outright on the ground that an IME was unreasonable and unnecessary in light of the medical records that plaintiff had already provided to defendant evidencing her permanent and ongoing injuries. See Dkt. # 19-1 at 39, 44; Dkt. # 19-2 at 2-15; Dkt. # 19-3 at 35-54, 61-64, 69-72; Dkt. # 19-4 at 20-21; Dkt. # 19-5 at 5-19, 25-27, 36-37, 39-43; Dkt. # 19-6 at 4-5, 10-13, 19-21.

During the course of this correspondence, the following events occurred:

---

[1] April 12, 2018 is the first mention on the record of defendant's request for an IME. It is a letter memorializing a telephone discussion between defendant and plaintiff's counsel and advising that defendant had determined that an IME was reasonable and necessary to move forward with evaluating plaintiff's claims. See Dkt. # 19-1 at 33. It is disputed, yet ultimately inconsequential, whether the telephone conversation purportedly memorialized in the letter occurred. See Dkt. # 19-1 at 35.

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 2

- On August 1, 2018, defendant increased the settlement offer to $37,718.  See Dkt. # 19-1 at 53.  Defendant did not increase the settlement offer again.

- On August 8, 2018, plaintiff's counsel provided defendant with additional medical evidence of plaintiff's ongoing injuries, including: (1) a visit summary, dated July 18, 2018, prepared by Dr. Virtaj Singh, MD of Seattle Spine & Sports Medicine, see Dkt. # 19-2 at 46-48, and (2) a "Performance-Based Physical Capacity Evaluation Narrative Summary – HDP," dated June 18, 2018, prepared by Dr. Theodore J. Becker, PhD, of Everett Pacific Industrial Rehabilitation, see id. at 49-138.

- On January 30, 2019, defense counsel sent plaintiff's counsel a letter attempting to stipulate to a medical examination pursuant to Civil Rule 35 ("CR 35").[2]  See Dkt. # 19-4 at 9-13.  Plaintiff's counsel objected to the proposed doctor.  See id. at 15.  Defense counsel replied and provided additional options in a letter that referred to both CR 35 and the portion of the insurance contract allowing defendant to seek an IME.  See id. at 17-18.  Plaintiff's counsel rejected the additional doctors as well.  See id. at 20-21.

- On October 28, 2019, defense counsel sent plaintiff's counsel a letter stating that defendant stood by its settlement offer of $37,718, and that if plaintiff did not accept that amount or submit to an IME, it would close plaintiff's file.  See Dkt. # 19-6 at 2.  In response to further correspondence from plaintiff's attorney, see id. at 4-5, 10-17, 19-21, defendant reiterated this message on November 15, 2019, see id. at 7-8, and, on May 5, 2020, stated that it had closed plaintiff's file, see id. at 23-24.

- On December 18, 2020, plaintiff's counsel sent defense counsel a letter enclosing a medical records review, dated December 4, 2020, prepared by Dr. Gary Schuster, MD.  See generally id. at 29-58.  Dr. Schuster concluded that plaintiff continued to suffer unresolved injuries from the collision, and stated that his evaluation was not prejudiced by the fact that he did not conduct a physical examination of plaintiff.  See id.  On

---

[2] CR 35 provides for physical examination of a person whose condition is in controversy via court order or stipulation between the parties.  Wash. Super. Ct. Civ. R. 35.

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 3

1    January 7, 2021, defense counsel replied that plaintiff had been given the option of

2    undergoing an IME or accepting the settlement offer of $37,718, and that because

3    plaintiff had selected neither, defendant had closed her file, but would reopen it if

4    plaintiff would submit to the IME or accept the settlement offer.  See id. at 60-61.

5        On January 13, 2021, plaintiff's counsel sent defendant's counsel a letter providing the

6    twenty-day written notice required before filing suit under Washington's Insurance Fair Conduct

7    Act.  See id. at 63-68.  Plaintiff filed suit in King County Superior Court on March 16, 2021,

8    Dkt. # 1 at ¶ 1, and defendant removed the action to this Court on April 9, 2021, see generally

9    Dkt. # 1.  The Court issued an order denying plaintiff's motion to remand on August 16, 2021.

10   See generally Dkt. # 27.

11       Plaintiff brings the following claims under the law of Washington State: (1) violations of

12   the Insurance Fair Conduct Act, RCW ch. 48.30, (2) breach of contract, (2) violations of the

13   Consumer Protection Act, RCW ch. 19.86, (3) breach of duty of good faith, (4) negligence, and

14   (5) declaratory relief pursuant to RCW 7.24.020.  Dkt. # 1-1 at ¶¶ 6.1-6.7, 7.8.  At issue in the

15   cross-motions for summary judgment before the Court is defendant's affirmative defense of

16   noncooperation.

17       **II.     Summary Judgment**

18              **A.  Legal Standard**

19       Summary judgment is appropriate when, viewing the facts in the light most favorable to

20   the nonmoving party, there is no genuine issue of material fact that would preclude the entry of

21   judgment as a matter of law.  The party seeking summary dismissal of the case "bears the initial

22   responsibility of informing the district court of the basis for its motion," Celotex Corp. v.

23   Catrett, 477 U.S. 317, 323 (1986), and "citing to particular parts of materials in the record" that

24   show the absence of a genuine issue of material fact, Fed. R. Civ. P. 56(c).

25       Once the moving party has satisfied its burden, it is entitled to summary judgment if the

26   non-moving party fails to designate "specific facts showing that there is a genuine issue for

27   trial."  Celotex Corp., 477 U.S. at 324.  The Court will "view the evidence in the light most

28   favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor."

1  Colony Cove Props., LLC v. City of Carson, 888 F.3d 445, 450 (9th Cir. 2018).  Although the

2  Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the

3  evidence, and legitimate inferences, the "mere existence of a scintilla of evidence" in support of

4  the non-moving party's position is insufficient to avoid judgment.  City of Pomona v. SQM N.

5  Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S.

6  242, 252 (1986).  Factual disputes whose resolution would not affect the outcome of the suit are

7  irrelevant to the consideration of a motion for summary judgment.  S. Cal. Darts Ass'n v.

8  Zaffina, 762 F.3d 921, 925 (9th Cir. 2014).  In other words, summary judgment should be

9  granted where the nonmoving party fails to offer evidence from which a reasonable fact finder

10  could return a verdict in its favor.  Singh v. Am. Honda Fin. Corp., 925 F.3d 1053, 1071 (9th

11  Cir. 2019).

12        On cross-motions for summary judgment, the Court evaluates the motions separately,

13  "giving the nonmoving party in each instance the benefit of all reasonable inferences."  Lenz v.

14  Universal Music Corp., 801 F.3d 1126, 1130-31 (9th Cir. 2015) (citation omitted).

15        **B.  Discussion**

16        Both parties' motions for summary judgment concern defendant's affirmative defense of

17  noncooperation.  Defendant asks the Court to find that plaintiff breached her insurance contract

18  when she refused to submit to an insurer-scheduled medical examination ("IME"), and that her

19  breach precludes her lawsuit.  Plaintiff, in turn, asks the Court to find that her conduct did not

20  amount to noncooperation.  The Court considers (1) defendant's motion, before turning to

21  (2) plaintiff's motion.  Finally, the Court considers (3) plaintiff's motion for relief pursuant to

22  Federal Rule of Civil Procedure 56(d).

23        **1.  Defendant's Motion for Summary Judgment**

24        Defendant moves the Court to dismiss all of plaintiff's claims with prejudice on the

25  ground that plaintiff's refusal to undergo an IME breached the cooperation clause of the

26  insurance contract.  See Dkt. # 18 at 16-17.

27        "Most insurance policies contain cooperation clauses requiring the insured to cooperate

28  with the insurer's handling of claims."  Staples v. Allstate Ins. Co., 176 Wn.2d 404, 410 (2013)

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 5

(citation omitted).  Plaintiff's insurance policy with defendant is a first-party policy containing both a general cooperation clause and specific, enumerated cooperation duties, including the requirement that plaintiff submit to an IME.  Cf. id. at 410-11 (describing types of cooperation clauses); Dkt. # 19-1 at 9 (policy cooperation clause).  Regarding IMEs, the cooperation clause provides as follows: "Each person claiming any coverage of this policy must also: . . . have a medical exam at our expense as often as we may reasonably ask.  We will select the doctor." Dkt. # 19-1 at 9.  The policy also provides that defendant has no duty to provide coverage if plaintiff does not comply with her duties and defendant is prejudiced: "If we are prejudiced by a failure to comply with the following duties [including the IME cooperation clause], then we have no duty to provide coverage under this policy."  Id.  Failure to comply also precludes plaintiff from suing defendant: "We may not be sued unless all the terms of this policy are complied with."  Id. at 15; see also Staples, 176 Wn.2d at 410 (establishing that under Washington law, an insured that breaches a cooperation clause may be contractually barred from bringing suit under the policy).

"The burden of proving noncooperation is on the insurer."  Staples, 176 Wn.2d at 410 (citing Oregon Auto. Ins. Co. v. Salzberg, 85 Wn.2d 372, 375-76 (1975)).[3]  To prevail on the affirmative defense of noncooperation, an insurer must show three things: (a) the insured failed to "substantially comply" with the terms of the cooperation clause, (b) the information at issue

---

[3] Defendant argues that Albee v. Farmers Ins. Co. of Wash., 92 Wn. App. 866, 867 (1998), not Staples, controls.  The Court disagrees.  Staples was issued both later in time and by a higher court than Albee.  Staples' principles are not unique to requests for examination under oath, and courts in this district have applied Staples to a variety of insurance contract cooperation clause disputes.  See, e.g., Townsley v. GEICO Indem. Co., No. C12-1909 RSL, 2013 WL 3279274, at *3 (W.D. Wash. June 27, 2013) (applying Staples to determine if insurer was entitled to mental examination under cooperation clause); U.S. Fire Ins. Co. v. Icicle Seafoods, Inc., No. C20-00401-RSM, 2021 WL 5415306, at *9 (W.D. Wash. Nov. 19, 2021) (applying Staples to documentary evidence and projections); Milgard Mfg., Inc. v. Liberty Mut. Ins. Co., 107 F. Supp. 3d 1171, 1177-78 (W.D. Wash. 2015) (applying Staples to investigation of real property before remediation).

Additionally, Albee is not as directly analogous to the case at hand as defendant claims.  In that case, Mr. Albee's own doctors expressed concerns that Mr. Albee was malingering.  See Albee, 92 Wn. App. at 869-70, 874.  Here, defendant points to no evidence indicative of malingering or fraud.

1   was material to the circumstances giving rise to the insurer's liability, and (c) the insurer

2   suffered actual prejudice as a result.  Wilson v. Geico Indem. Co., No. C18-226 RAJ, 2018 WL

3   3869436, at *3 (W.D. Wash. Aug. 15, 2018) (citing Pilgrim v. State Farm Fire & Cas. Ins. Co.,

4   89 Wn. App. 712, 720-21 (1997); Tran v. State Farm Fire & Cas. Co., 136 Wn.2d 214, 224

5   (1998); Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wn.2d 411, 428-29 (2008)); see also

6   Staples, 176 Wn.2d at 410.  The Court considers each element in turn.[4]

7                              **a. Substantial Compliance**

8       Defendant argues that plaintiff breached the cooperation clause by refusing to attend the

9   IME.  See Dkt. # 18 at 17-19.  Plaintiff argues that she cannot have breached the cooperation

10  clause by failing to attend the IME because defendant never scheduled the IME, and that there is

11  a genuine issue of material fact regarding whether defendant ceased to request an IME because

12  from January 30, 2019 forward, defendant's counsel referred to the examination as a "CR 35

13  examination."  See Dkt. # 22 at 10-11, 14-15.

14      The Court finds that plaintiff's actions evidence a lack of cooperation.  "Breach of a

15  cooperation clause is measured by the yardstick of substantial compliance."  Staples, 176 Wn.2d

16  at 414 (citing Pilgrim, 89 Wn. App. at 720).  Here, there are no unresolved factual issues

17  regarding substantial compliance.

18      First, it is undisputed that defendant requested an IME, and plaintiff's counsel objected.

19  Even now plaintiff does not argue that she would have attended an IME if defendant had

20  scheduled it.  It would be absurd to require defendant to take on the cost of scheduling an IME

21  simply to show that plaintiff was true to her word.[5]  Cf. Casey v. Murphy, 143 Wn. 17, 18

22

23      [4] Plaintiff argues that defendant is barred from arguing the affirmative defense of noncooperation
    because defendant did not plead it in its answer.  See Dkt. # 22 at 18.  While defendant did not
24  specifically plead noncooperation, its affirmative defenses include that "Plaintiff's actions have resulted
    in a waiver of Plaintiff's claims against Defendant American Family."  Dkt. # 17 at 13.  The Court,
25  therefore, allows defendant to proceed with this affirmative defense.

26      [5] Plaintiff's counsel argues that plaintiff cannot have failed to substantially comply where
27  defendant never scheduled the IME because the Staples court "faulted [the insurer] for never
    rescheduling the [examination under oath]" at issue.  Dkt. # 22 at 14.  This retelling of Staples is
28  incomplete.  The Staples court faulted the insurer for failing to reschedule the examination under oath

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 7

1   (1927) ("The rule is that a positive refusal to perform a contract before performance is due may

2   be regarded as a breach and the injured party can bring an action without delay."); <u>see also</u> Dkt.

3   # 19-1 at 9 (stating that defendant bears the expense of IMEs).

4     Second, it is false that from January 30, 2019 forward, defense counsel referred to the

5   examination as a "CR 35 examination." It is true that defense counsel requested a stipulated

6   CR 35 examination on January 30, 2019. <u>See</u> Dkt. # 19-4 at 9-13. In a letter dated March 18,

7   2019, defense counsel again referred to CR 35, but also used the term "IME," and cited to the

8   cooperation clause of the insurance policy. <u>See</u> Dkt. # 19-4 at 17-18. In future correspondence,

9   defense counsel ceased reference to CR 35 and regularly emphasized that defendant was seeking

10   an IME under the terms of the policy. <u>See</u> Dkt. # 19-5 at 2-3 (March 21, 2019), 21-23 (May 9,

11   2019), 33-34 (May 30, 2019), 42-43 (July 30, 2019); Dkt. # 19-6 at 2 (October 28, 2019), 7-8

12   (November 15, 2019), 16-17 (July 30, 2019), 23-24 (May 5, 2020). Even accepting the premise

13   that defense counsel requested a CR 35 examination separate and apart from the IME on January

14   30, 2019, this does not negate the fact that plaintiff declined to attend the IME and never

15   changed course. Plaintiff's suggestion that defense counsel's intermediate reference to a CR 35

16   examination means that defendant no longer sought an IME does not create a genuine issue of

17   material fact as to evade summary judgment. <u>Accord</u> <u>Anderson</u>, 477 U.S. at 252 (1986) ("The

18   mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;

19   there must be evidence on which the jury could reasonably find for the plaintiff.").

20            **b. Material Information**

21     Defendant argues that the objective medical information that it would gain from the IME

22   is imperative to determining causation of injuries and the extent of necessary treatment

23   following plaintiff's collision. <u>See</u> Dkt. # 18 at 18, 19. In its reply, defendant asserts that

24

25   _____

26   where the insurer had predicated rescheduling on its receipt of certain documents it sought from the
    insured, and there was evidence that suggested that the insured had substantially complied with the

27   document production request. <u>Staples</u>, 176 Wn.2d at 416. Here, there is nothing in the record to suggest
    that defendant predicated scheduling the IME on any other action or that plaintiff took any steps towards

28   agreeing to or attending the IME.

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 8

1  "[f]ollowing an initial medical records review, it was determined by the medical professional
2  that an IME was necessary 'to determine reasonable and related treatment in regards to this
3  motor vehicle accident.'"  Dkt. # 23 at 2 (quoting Dkt. # 19-5 at 33); see also id. at 6-7.  Plaintiff
4  argues that the IME request was not reasonable or material to defendant's claim investigation
5  because there is no discrepancy between plaintiff's claim and her detailed medical information.
6  See Dkt. # 22 at 12-14.  Plaintiff further argues that injury causation and necessity of treatment
7  cannot serve as bases for the IME's materiality because defendant accepted injury causation and
8  plaintiff's past medical treatment as reasonable and necessary for injuries caused by the collision
9  when it paid her PIP benefit.  See id. at 12.

10        If the action demanded under a cooperation clause is "not material to the investigation or
11  handling of a claim, an insurer cannot demand it."  Staples, 176 Wn.2d at 414.  An action is
12  material if it is "concerning a subject reasonably relevant and germane to the insurer's
13  investigation as it was proceeding at the time it made the demand."  Pilgrim, 89 Wn. App. at
14  720.  An insurer "should not have license to burden an insured with demands for items that are
15  immaterial."  Tran, 136 Wn.2d at 232.  "If the insurer claims that it was deprived of the ability
16  to investigate, it must show that the kind of evidence that was lost would have been material to
17  its defense."  Mut. of Enumclaw Ins. Co., 164 Wn.2d at 430.

18        Here, the Court finds there is a genuine dispute of material fact regarding the materiality
19  of the requested IME to defendant's claim investigation.  It is undisputed that defendant
20  accepted all of plaintiff's medical special damages and paid out her policy limit of $10,000 in
21  PIP coverage.  See Dkt. # 19-5 at 42 ("American Family has accepted all of your client's prior
22  medical specials in this matter, totaling $15,718.00.  Your client's PIP paid for $10,000.00 of
23  these medical expenses already."); Dkt. # 19-6 at 2, 7 (substantially same).  The insurance
24  policy provides as follows regarding PIP coverage of healthcare costs:

25            [W]e will pay Personal Injury Protection benefits for the actual amount
          of loss or expense incurred for: . . . Reasonable and necessary expenses
26            incurred by or on behalf of an insured person for injuries sustained as a
          result of an automobile accident for health care services . . .
27

28

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 9

1   Dkt. # 19-1 at 30.  Applying the text of the policy to the facts of the case, it is reasonable to infer
2   that prior to paying plaintiff's PIP benefits, defendant determined that her injuries were caused
3   by the collision and that her medical expenses were reasonable and necessary.  While
4   defendant's letters to plaintiff's counsel indicated concerns regarding differentiation of
5   plaintiff's collision injuries from similarly located preexisting injuries, see Dkt. # 19-3 at 2, 56,
6   defendant does not provide evidence to demonstrate why the information plaintiff submitted was
7   sufficient to extend PIP coverage, but not the other benefits she sought.  Taking the facts in the
8   light most favorable to plaintiff, the Court therefore concludes that a genuine issue of material
9   fact precludes summary judgment.

10                                              **c.  Prejudice**

11         Defendant argues that plaintiff's repeated refusal to undergo an IME prejudiced it
12   because it was left without objective medical opinions to rely on when investigating and
13   assessing plaintiff's claim.  See Dkt. # 18 at 19, 20.  In particular, defendant argues it was
14   prejudiced regarding its analysis pertaining to causation of injuries and extent of treatment
15   necessary following the collision, see id. at 19, and that while plaintiff submitted medical
16   records, her providers could not respond to defendant's inquiries following its medical records
17   review, see Dkt. # 23 at 7.  Plaintiff counterargues that defendant has failed to present any
18   affirmative evidence of prejudice, and that Dr. Schuster confirmed in his opinion that his
19   evaluation was not prejudiced by the lack of an additional physical evaluation of plaintiff.  See
20   Dkt. # 22 at 15-17.

21         "Prejudice is an issue of fact that will seldom be established as a matter of law."  Staples,
22   176 Wn.2d at 419 (citing Tran, 136 Wn.2d at 228).  A claim of actual prejudice requires
23   "affirmative proof of an advantage lost or disadvantage suffered as a result of the breach, which
24   has an identifiable detrimental effect on the insurer's ability to evaluate or present its defenses to
25   coverage or liability."  Id. at 419 (quoting Tran, 136 Wn.2d at 228-29) (internal punctuation
26   omitted).  The burden to show prejudice resulting from breach of the cooperation clause is on
27   the insurer, and not every breach discharges performance by the insurer.  Id. at 421 (citing Pub.
28   Util. Dist. No. 1 of Klickitat Cnty. v. Int'l Ins. Co., 124 Wn.2d 789, 801 (1994)); Pilgrim, 89

1   Wn. App. at 724-25.  There is no *per se* rule that delay of an investigation amounts to prejudice,

2   Staples, 176 Wn.2d at 420-21, and prejudice will be presumed only in "extreme cases," id.

3   (quoting Pub. Util. Dist. No. 1, 124 Wn.2d at 805).

4        This is not an extreme case.  In comparison, in Tran, the Washington Supreme Court

5   found that the insurer had established prejudice as a matter of law.  See Tran, 136 Wn.2d at,

6   231-32.  However, "Tran was an extreme case, in which the insured stonewalled the insurer's

7   investigation, refusing to help or provide documentation.  Importantly, the insurer in Tran was

8   faced with the 'Hobson's choice' of either paying a suspected fraudulent claim, or exposing

9   itself to bad faith liability."  Staples, 176 Wn.2d at 420 (citing Tran, 136 Wn.2d at 230).  Here,

10  defendant has failed to put forth affirmative evidence that it was prejudiced by plaintiff's failure

11  to attend the IME.  Far from stonewalling the investigation, plaintiff provided extensive medical

12  records, and defendant does not suggest it suspected fraud.  While defendant's letters to plaintiff

13  indicated concern that it could not differentiate plaintiff's preexisting injuries from her collision

14  injuries, see Dkt. # 19-3 at 2, 56, defendant fails to explain why plaintiff's existing records could

15  not answer its questions or what information it lacked.  Summary judgment in defendant's favor

16  is therefore inappropriate.

17              **2.       Plaintiff's Motion for Summary Judgment**

18        Plaintiff asks the Court to enter summary judgment in her favor on defendant's

19  affirmative defense of noncooperation.  The Court briefly revisits its Staples analysis, now

20  viewing the evidence in the light most favorable to defendant and drawing all reasonable

21  inferences in its favor.  Colony Cove Props., LLC, 888 F.3d at 450.  The Court again considers

22  in turn: (a) whether the insured failed to "substantially comply" with the terms of the

23  cooperation clause, (b) whether the information at issue was material to the circumstances

24  giving rise to the insurer's liability, and (c) whether the insurer suffered actual prejudiced as a

25  result.  See Staples, 176 Wn.2d at 410.

26              **a.  Substantial Compliance**

27        Plaintiff argues that she cannot have breached the cooperation clause by failing to attend

28  the IME because defendant never scheduled the IME, and that there is a genuine issue of

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 11

1    material fact regarding whether defendant ceased to request an IME because from January 30,

2    2019 forward, defendant's counsel referred to the examination as a "CR 35 examination."  See

3    Dkt. # 22 at 10-11, 14-15, see also Dkt. # 26 at 8-9.[6]  Defendant responds that plaintiff did not

4    substantially comply because, dissimilarly to Staples, plaintiff failed to provide the information

5    that defendant sought through the IME.  See Dkt. # 25 at 5-6.

6            "Breach of a cooperation clause is measured by the yardstick of substantial compliance."

7    Staples, 176 Wn.2d at 414 (citing Pilgrim, 89 Wn. App. at 720).  The Court reiterates its earlier

8    determination that there is no genuine issue of material fact regarding whether defendant

9    requested an IME and plaintiff refused to attend.  See supra Part II.B.1.a.  The Court agrees that

10   the facts of this case are not analogous to Staples because the key consideration there was that

11   the insurer had predicated rescheduling the IME on first receiving additional documentation, and

12   there was a genuine issue of material fact regarding if the insured had complied with this

13   predicate request for documentation.  See id., n.3.  Here, no such complication exists.  The Court

14   therefore concludes that plaintiff is not entitled to summary judgment on this issue.

15                              **b.  Material Information**

16           Plaintiff argues that the IME request was not reasonable or material to defendant's claim

17   investigation because there is no discrepancy between plaintiff's claim and her detailed medical

18   information, and the fact that defendant did not like the information it received does not render

19   the information incomplete.  See Dkt. # 22 at 12-14; see also Dkt. # 26 at 3-6.  Plaintiff further

20   argues that injury causation and necessity of treatment cannot serve as bases for the IME's

21   materiality because defendant accepted injury causation and plaintiff's past medical treatment as

22   reasonable and necessary for injuries caused by the collision when it paid her PIP benefit.  See

23   Dkt. # 22 at 12; see also Dkt. # 26 at 2-3, 5-8.  Defendant counterargues that it sought an IME

24

25           [6] Plaintiff also argues in her reply that "if AmFam had not breached its duty of good faith and
26   actually considered the objective medical information that favored Plaintiff, then there would have been
     no reason for it to continue requesting an examination."  Dkt. # 26 at 8.  This prong, however, deals with
27   whether plaintiff complied with defendant's request.  The Court considers the *propriety* of the request
     under the materiality prong.
28

from an independent physician licensed in the State of Washington because plaintiff's evidence did not support plaintiff's policy-limit demand.  See Dkt. # 25 at 5.  In particular, defendant states that it needed the IME to evaluate the relatedness of future and ongoing medical treatment and plaintiff's claims of permanent injuries.  See id.

In summary, if the action demanded under a cooperation clause is "not material to the investigation or handling of a claim, an insurer cannot demand it."  Staples, 176 Wn.2d at 414. An action is material if it is "concerning a subject reasonably relevant and germane to the insurer's investigation as it was proceeding at the time it made the demand."  Pilgrim, 89 Wn. App. at 720.

Taking the evidence in the light most favorable to defendant, there is a genuine issue of material fact regarding whether the IME was material to the investigation.  As discussed above, it is not disputed that defendant paid plaintiff's PIP benefits, therefore leading to a strong inference that defendant had determined that plaintiff's injuries were caused by the collision and that her medical expenses were reasonable and necessary.  See supra Part II.B.1.b.  However, PIP benefits cover expenses actually incurred.  See Dkt. # 19-1 at 30.  Taking the evidence in the light most favorable to defendant, a determination that plaintiff was injured in the collision and that her *previously* incurred medical expenses were reasonable and necessary does not foreclose a determination that her *future and ongoing* medical treatment was unreasonable, unnecessary, or for injuries not caused by the collision.  Further, defendant informed plaintiff why it sought the IME: plaintiff's medical records showed pre-accident injuries and treatments consistent with plaintiff's ongoing conditions.  See Dkt. # 19-3 at 2, 56.  For example, three years after her collision, plaintiff reported ongoing left lower back pain and tension across the neck and trapezius,[7] see Dkt. # 19-6 at 48-49, but in the three years proceeding her collision, she regularly received treatment for neck stiffness and pain, upper back pain (at times isolated to the

---

[7] "The trapezius is a muscle that starts at the base of your neck, goes across your shoulders and extends to the middle of your back."  Trapezius Muscle, Cleveland Clinic, https://my.clevelandclinic.org/health/body/21563-trapezius-muscle (last visited July 1, 2022).

1  left), lower back tightness and pain (at times isolated to the left), and left hip tightness, among

2  other conditions, see id. at 49-52.  Summary judgment is therefore inappropriate.

### c. Prejudice

4      Plaintiff argues that defendant has failed to present any affirmative evidence of prejudice,

5  that Dr. Schuster confirmed in his opinion that his evaluation was not prejudiced by the lack of

6  an additional physical evaluation of plaintiff, and that defendant's claims that it faced a choice

7  between paying the policy limit and bad faith litigation are disingenuous because it had an

8  abundance of plaintiff's medical information at its disposal.  See Dkt. # 22 at 15-17; see also

9  Dkt. # 26 at 9-10.  Defendant leans on Albee to argue that it was prejudiced by plaintiff's failure

10  to attend the IME because it was left without an IME conducted by a physician licensed in the

11  State of Washington, and notes that it repeatedly informed plaintiff that her refusal prejudiced it.

12  See Dkt. # 25 at 5.

13      In summary, a claim of actual prejudice requires "affirmative proof of an advantage lost

14  or disadvantage suffered as a result of the breach, which has an identifiable detrimental effect on

15  the insurer's ability to evaluate or present its defenses to coverage or liability." Staples, 176

16  Wn.2d at 419 (quoting Tran, 136 Wn.2d at 228-29) (internal punctuation omitted).

17      In essence, defendant asks the Court to find that plaintiff's alleged breach of the

18  cooperation clause amounted to prejudice per se.  However, the Staples court rejected "creating

19  a per se rule that every time an investigation is delayed the insurer can simply deny the claim for

20  noncooperation," because "[t]his would undermine the actual prejudice requirement." Id. at

21  420-21.  The Court declines to do so here.

22      Defendant points to no affirmative proof of an advantage lost or disadvantage suffered

23  beyond the circular averment that it was denied an IME to which it was entitled.  Defendant's

24  repeated assertion that it has been prejudiced does not make it so.  In contrast, plaintiff points to

25  Dr. Schuster's report as affirmative evidence that defendant was not prejudiced by its inability to

26  conduct an IME.  See Dkt. # 19-6 at 58 ("My evaluation was not prejudiced by a lack of

27  physical exam.  Evaluation . . . is based upon review of all of the medical providers . . .,

28  radiologic studies . . ., and performance-based physical capacity exam, which, on a more

1  probable than not basis, accurately describe the residuals of this woman's problems."). The

2  Court concludes that there is no genuine issue of material fact on this point.[8] Summary

3  judgment in favor of plaintiff on the issue of prejudice is therefore appropriate.

4      A determination that defendant suffered no prejudice as a matter of law is dispositive to

5  the Court's analysis of defendant's affirmative defense of noncooperation. See Milgard Mfg.,

6  Inc., 107 F. Supp. 3d at 1177; cf. Pub. Util. Dist. No. 1, 124 Wn.2d at 803 ("[A]n insurer cannot

7  deprive an insured of the benefit of a purchased coverage absent a showing that the insurer was

8  actually prejudiced by the insured's noncompliance with conditions precedent."). The Court

9  therefore grants partial summary judgment in favor of plaintiff on defendant's affirmative

10  defense of noncooperation.

11                          **3.    Rule 56(d)**

12      Plaintiff moves the Court to defer consideration of defendant's motion for summary

13  judgment "until after AmFam provides outstanding discovery to Plaintiff, including the opinion

14  of its records reviewer, and there is sufficient time for follow up discovery, including

15  depositions to ascertain how the information submitted by Plaintiff was insufficient." Dkt. # 22

16  at 17.  Under Rule 56(d), "If a nonmovant shows by affidavit or declaration that, for specified

17  reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer

18  considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take

19  discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).  However, because

20  the Court declines to grant summary judgment in favor of defendant on the record before it, it

21

22      [8] Defendant's memoranda submitted in support of its own motion for summary judgment provide

23  more detail regarding its prejudice argument.  For example, defendant there argues that it was prejudiced
    regarding its analysis pertaining to causation of injuries and extent of treatment necessary following the

24  collision, see Dkt. # 18 at 19, and that while plaintiff submitted medical records, her providers could not
    respond to defendant's inquiries following its medical records review, see Dkt. # 23 at 7.  However,

25  even if these arguments were properly before the Court in regard to *plaintiff*'s cross-motion for summary
    judgment, they would not alter the Court's conclusion.  This is because defendant bears the burden of

26  proof on the issue of actual prejudice, see Staples, 176 Wn.2d at 421, and it fails to explain what
    questions remained, why plaintiff's existing records could not answer its questions, or what information

27  it lacked.  In short, defendant provides assertions without supporting evidence.

28

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 15

concludes that such relief to plaintiff is unwarranted.  The discovery window in this case remains open until December 4, 2022.  <u>See</u> Dkt. # 30.  To the extent that plaintiff believes that she is entitled to discovery that defendant refuses to produce, she may file a motion to compel discovery.  The Court declines to rule on the merits of the discovery issue at this time.

**III.    Conclusion**

For all of the foregoing reasons, IT IS HEREBY ORDERED THAT:

1.  Defendant's Motion for Summary Judgment (Dkt. # 18) is DENIED.

2.  Plaintiff's Request for Summary Judgment for Plaintiff (Dkt. # 22) is GRANTED. Plaintiff is granted partial summary judgment solely on defendant's affirmative defense of noncooperation.

DATED this 3rd day of October, 2022.

Robert S. Lasnik
United States District Judge

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 16